**James N. DUNLOP, et al.**

**v.**

**STATE OF MINNESOTA, et al.**

Civil No. 4–85–1226.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 23, 1986.

Joe A. Walters and Douglas M. Carnival, O'Connor & Hannan, Minneapolis, Minn., for plaintiffs.

Scott R. Strand, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants.

## ORDER

ROSENBAUM, District Judge.

The plaintiffs bring suit against the State of Minnesota, the Minnesota Department of Employee Relations, and certain of that department's past and present employees. Plaintiffs are present or former employees of the State of Minnesota, who sue on their own behalf and as claimed-to-be representatives of an as yet uncertified class. The putative class, which they assert they represent, numbers between 2,500 and 5,000 people. Their assertion is that the State improperly withheld social security contributions from wages paid to its employees while on sick leave from 1955–1981.

Plaintiffs allege that this withholding by defendants amounted to a breach of fiduciary duty, the tort of negligence and wrongful conversion on the part of the defendants. They also argue that because this withholding of funds was in violation of the Social Security Act, a federal question is involved. The plaintiffs seek retroactive return of the funds they claim were wrongfully withheld, a sum they assert to be in the millions of dollars. The Court finds that the plaintiffs' claims are barred as set forth below, and summary judgment is granted to the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.).

*Facts*

During the 1950's, Congress passed the Social Security Act and a series of amendments permitting States to enter into voluntary agreements with the Secretary of Health and Human Services to extend social security coverage to their employees in

what is now 42 U.S.C. 418 (1978). The State of Minnesota entered into such an agreement and by 1957 it had extended social security coverage to most of its employees.[1] The Minnesota Agreement, in compliance with 42 U.S.C. 418 of the Social Security Act, requires that the State pay social security taxes to the Secretary of the Treasury. The taxes are computed as a percentage of wages received from employment.

This suit concerns the proper definition of "wages" and therefore the proper measure of social security contributions from 1955 to 1981. Prior to the re-definition in 26 U.S.C. 3121(a), the definition of "wages" was:

(2) the amount of any payment ... made to or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provisions for his employees generally ... on account of

(B) sickness or accident disability.

By amendment on December 29, 1981, Congress defined "wages" in a manner which excluded payments on account of sickness unless the wages were received under a workmen's compensation plan. 42 U.S.C. 409(b). Since 1982, the State of Minnesota (both the plaintiff and defendant agree) has complied with the 1981 definition of "wages" in calculating social security contributions.

From 1955 to 1981, the State had not excluded sick pay from wages in assessing social security contributions. The plaintiff argues that the failure to exclude payments on account of sickness violated the definition of "wages" in 26 U.S.C. 3121(a). The State, however, contends that "payments on account of sickness" was interpreted differently for the private and the public sectors. The State argues that absent affirmative legislative authority or a comprehensive plan, it was not empowered to exclude "payments on account of sickness" from public employees' wages.

As a preface to any consideration of the merits of this case, the Court must consider the mandate of the eleventh amendment to the United States Constitution.

The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court has interpreted this amendment to mean that a citizen may not bring suit against his own state in federal court. *Hans v. State of Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has recently reiterated the significance of the eleventh amendment in defining the states' sovereign immunity. *Atascadero State Hosp. v. Scanlon*, — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The Court relied upon the Framer's belief that "States played a vital role in our system and that strong state governments were essential to serve as a 'counterpoise' to the power of the federal government. See, e.g., The Federalist, No. 17, p. 107 (J. Cooke ed. 1961); The Federalist, No. 46, p. 316." 105 S.Ct. at 3146, n. 2. The eleventh amendment as a fundamental principle of sovereign immunity which limits the grant of judicial authority in Article III has been affirmed time and time again. E.g., *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 1355–1356, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The plaintiffs argue that their claim is not a suit against the State which would be barred. They make this claim because of the possibility that the United States, itself, will reimburse the State for retroactive monetary relief. According to 20 C.F.R. 404.1201, *et seq.*, effective January 1980, a state may seek reimbursement for over-

---

1. ... Those employees who voted against coverage prior to the referendum are not covered by the social security system. Minn.Stat. ch. 355 (1982); Op. Att'y Gen. 331-i (November 15, 1982).

payment of social security contributions from the United States. But the time for seeking such reimbursements has expired for all years except 1980 and 1981. 20 C.F.R. 404.1285, *et seq.* In response, plaintiffs argue that it is not impossible for the United States to reimburse the State for over-contributions prior to 1980 although there is no regulation which so requires. Thus, the plaintiffs steadfastly rely on the possibility that the State's treasury will not be called upon to compensate them for their claimed loss as a means of circumventing the eleventh amendment's jurisdictional bar.

This Court finds that either the eleventh amendment bars this suit, or the cause must fail pursuant to Rule 19, Fed.R. Civ.P., for the plaintiffs' failure to join an indispensable party—the United States. In the absence of the joinder of the Republic, the plaintiffs' attempt to avoid the eleventh amendment's jurisdictional bar by claiming that the United States rather than Minnesota is a possible source of relief, cannot succeed. There are only two conceivable outcomes in the event that the plaintiffs prevail: either the State of Minnesota will pay retroactive monetary relief, or the United States will. If Minnesota is required to pay this sum, then the eleventh amendment explicitly bars any claim against a State for retroactive damages. *Atascadero State Hosp. v. Scanlon,* — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). If, on the other hand, the United States is to be the payee, the suit must be dismissed for failure to join it as an indispensable party.

Thus, no matter who pays the relief, this Court may not hear the plaintiffs' suit. Defendant's motion for summary judgment must be granted.

*Discussion*

A. Eleventh Amendment

The United States Supreme Court's recognized exceptions to the eleventh amendment bar were set out most recently in *Atascadero,* where the Court noted that,

[t]here are, however, certain well-established exceptions to the reach of the Eleventh Amendment [sic]. For example, if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment [sic] does not bar the action. (Citation omitted.) Moreover, the Eleventh Amendment [sic] is "necessarily limited by the enforcement provisions of section 5 of the Fourteenth Amendment [sic]," that is, by Congress' power "to enforce by appropriate legislation, the substantive provisions of the Fourteenth Amendment [sic]." (Citation omitted.)

105 S.Ct. at 3145.

In a prior order in this case, my brother, Judge Renner, held that Minnesota has not waived its constitutional immunity from suit in federal court. Order dated July 5, 1984, U.S.D.C., D.Minn., Civil No. 3–84–485. Thus, the plaintiffs' suit does not fall into the first exception, the state's voluntary waiver of immunity. The action cannot be sustained on this ground.

Nor does this suit fall into the second *Atascadero* exception which occurs when Congress, acting under section 5 of the fourteenth amendment, authorizes federal courts to award retroactive monetary relief against a state government in favor of a private individual. The Supreme Court clarified the circumstances under which Congress abrogates a state's immunity by requiring that "Congress unequivocally express this intention in the statutory language ...." *Atascadero,* 105 S.Ct. at 3148. The plaintiffs offer no argument that the Social Security Act was passed under section 5 of the fourteenth amendment. Nor is there any express statutory language in the Act allowing private individuals to sue the state in federal court. The only sanction against a state which is available under the Act is the termination of federal funds when the state fails to conform to federal law. 42 U.S.C. 604. Thus, the second exception does not apply to the plaintiffs' claim and this cause cannot be sustained on this ground.

■ Plaintiffs, however, suggest the existence of an additional exception to the eleventh amendment which occurs when a state may permissively seek reimbursement from the federal government. They offer three inapposite cases in support of this thesis. The first, *Witter v. Pennsylvania Nat. Guard,* 462 F.Supp. 299 (E.D.Pa. 1978) involved an action brought against the Commonwealth of Pennsylvania under the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. 2021, *et seq.* (1976). That Act, unlike the Social Security Act, expressly provided that:

> [i]f any employer, who is a private employer or a *State* or political subdivision thereof, fails or refuses to comply with [the Act], *the district court of the United States* ... shall have the power ... specifically to require such employer ... to compensate such person for *any loss of wages or benefits* suffered by reason of such employer's unlawful action.

38 U.S.C. 2022 (1976) (emphasis provided). This express authorization which gave jurisdiction to federal courts is clearly distinguishable from the Social Security Act which grants no such authority to the federal courts to hear claims against the state. Thus *Witter* has no application here.

Plaintiffs also cite *Fernandez v. Chardon,* 681 F.2d 42 (1st Cir.1982).[2] *Fernandez* was a class action alleging that the Commonwealth of Puerto Rico had discriminated against some of its employees because of their political beliefs and associations. The court specifically denied retroactive monetary relief against the Commonwealth. It held that the eleventh amendment barred such relief because an award would deplete the Commonwealth's treasury. The court acknowledged in dicta that whether or not the eleventh amendment barred an action which would not effect a state's treasury was a distinct issue. But the facts of *Fernandez* did not require the court to address it. *Fernandez,* 681 F.2d at 51–52. Therefore, *Fer-*

*nandez* does not speak to or provide any support for the plaintiffs' argument.

Finally, plaintiffs directed the Court to *Harrington v. Blum,* 483 F.Supp. 1015 (S.D.N.Y.1979), aff'd without opinion, 639 F.2d 768 (2nd Cir. 1980). This case does not support the plaintiff's position. *Harrington* was a class action brought against city, state and federal officials in New York alleging that they had failed to establish procedures for the distribution of food stamps under the Food Stamp Act of 1964. 7 U.S.C. 2011, *et seq.* (1976). The District Court found that food stamp regulations explicitly required the states to provide benefits if the state had erroneously denied applications. 7 C.F.R. 271.1(q)(1) (1978). Because the state could seek reimbursement from the United States Department of Agriculture, the court permitted the plaintiffs to sue the State for retroactive monetary relief.

The Court in *Harrington* specifically relied upon a prior federal decision which held the federal government liable for retroactive food stamp benefits, *Bermudez v. United States Department of Agriculture,* 490 F.2d 718 (D.C.Cir.1973), cert. denied, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). *Harrington,* then, is limited to the Food Stamp Act. It has not been extended by another court to apply to any other act in which possible reimbursement by the federal government entitled a private individual to sue the state in contravention of the eleventh amendment.

This Court feels no compulsion to whittle at the sound principles of federalism encompassed by the eleventh amendment. This limited reading of the exceptions to the eleventh amendment is appropriate in light of the Supreme Court's recent discussion in *Atascadero,* 105 S.Ct. at 3145. The Court did not recognize federal reimbursement to a state as an established exception to a state's sovereign immunity.

**2.** A related case was decided by the United States Supreme Court, *Chardon v. Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), but the Court did not review the decision in *Fernan-*

*dez v. Chardon,* 681 F.2d 42 (1st Cir.1982). See, *Chardon v. Soto,* 462 U.S. at 653, n. 4, 103 S.Ct. at 2614, n. 4.

**B. Rule 19, Federal Rules of Civil Procedure**

 Even if this Court found that the eleventh amendment did not bar the suit, because the United States and not Minnesota might bear the financial burden, this Court would be required to dismiss this suit for failure to join an indispensable party pursuant to Rule 19(a), Fed.R.Civ.P. Under Rule 19(a), a person is a necessary party if:

(1) in his absence complete relief cannot be accorded among those already parties, or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations ....

It is integral to the plaintiff's argument that the eleventh amendment does not bar their action because the United States may be the ultimate payor of any recovery. They make this assertion under the authority of 20 C.F.R. 404.1201, *et seq.* Under this section, a state may seek reimbursement for overpayment of social security contributions from the federal social security pool. By its terms, the regulation limits the reimbursement of funds to two years after the overpayment was made to the Secretary of the Treasury. 20 C.F.R. 404.-1285(c)(3). The plaintiff also argues that the United States may, in its discretion, reimburse beyond this two year period. From this formulation the Court concludes that the possibility that the United States would be obligated to pay all or a portion of the damages makes its presence "necessary" (i) in order that complete relief may be granted, and (ii) to protect its own interest in the action.

Whereas the United States is a necessary party, it cannot be joined because of the lack of subject matter jurisdiction. According to 42 U.S.C. 405(h), the only type of claim permitted against the United States or the Secretary of Health and Human Services under the Social Security Act in federal court requires exhaustion of administrative remedies. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2547, 45 L.Ed.2d 522 (1975). The Social Security Act prohibits any other type of claim:

No action against the United States the Secretary of Health and Human Services or any officer or employee thereof shall be brought under Section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter (i.e. Title II).

42 U.S.C. 405(h). Therefore, absent the necessary exhaustion, acknowledged at oral argument, this court lacks subject matter jurisdiction to hear this case.

According to Rule 19(b), Fed.R.Civ.P., when joinder of a necessary party is not feasible, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." In determining whether the United States is indispensable or not, Rule 19(b) lists four factors:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The factor of paramount importance here is the plaintiffs' right to pursue an administrative and judicial remedy provided by the Social Security Act as their "adequate remedy."

Congress has specifically delineated a procedure whereby an aggrieved employee may seek relief for overcontributions. The employee may first request an official "statement of earnings record" from the Social Security Administration 42 U.S.C. 405(c)(5)(B), 20 C.F.R. 404.902. If the em-

ployee is not satisfied with the Social Security Administration's determination, he may file an appeal within the agency and then appeal to. the federal district court. 42 U.S.C. 405(c)(8) and (g).

The putative class representatives have not attempted to seek relief before the administrative tribunals. They cannot, and do not (in the absence of so much as an attempt), make a valid claim that there is no administrative remedy for their alleged injury. The plaintiffs have sought to bypass the method for seeking relief specifically provided by Congress. Because of the availability of administrative remedies and subsequent judicial review, this Court finds that the plaintiffs have an "adequate remedy" pursuant to Rule 19(b) of the Fed. R.Civ.P.

With these considerations in mind, this Court cannot find that "... in equity and good conscience the action should proceed among the parties before it %y(3(27." Instead, the Court finds that the action "... should be dismissed, the ... [United States] being thus regarded as indispensable." Rule 19(b), Fed.R.Civ.P.

*Conclusion*

The eleventh amendment's jurisdictional bar against suits for monetary relief against the state and the indispensability of the United States as a party to this action bar this Court from hearing plaintiffs' suit. For these reasons, this Court grants defendant's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.